# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Jessie Mae Trappier, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action No. 3:11-2494-RMG |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of the ) | |
| Social Security Administration, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

Plaintiff filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC., this matter was referred to the Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on September 28, 2012 recommending that the decision of the Commissioner be affirmed. (Dkt. No. 25). Plaintiff timely filed objections to the Report and Recommendation of the Magistrate Judge (Dkt. No. 29), and the Commissioner filed a reply (Dkt. No. 31). As further set forth below, the Court reverses the decision of the Commissioner and remands the matter for further action consistent with this opinion.

## Standard of Review

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 271 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

However, "[t]he statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58. Moreover, the findings of the Commissioner are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## Factual Background

Plaintiff, whose past relevant work included work in a laundry and as a housekeeper at a motel, presented to the Emergency Department of Georgetown Memorial

Hospital in Georgetown, South Carolina, on November 29, 2007 with complaints of chest pain and shortness of breath. Transcript of Record (hereafter "Tr.") at 205-06. She was ultimately diagnosed with an acute inferior wall myocardial infarction following an urgent cardiac catheterization and had a stent placed to resolve a 95% obstruction of her right coronary artery. Tr. at 200-13. Shortly following her discharge for her heart attack, Plaintiff began complaining of "difficulty walking" and was documented to be using a cane by her cardiologist, Dr. Mitchell Devlin. Tr. at 234-36. In a follow up office visit on February 6, 2008, Dr. Devlin documented that Plaintiff had "continued right lower extremity discomfort" that had "persisted since cath." Tr. at 261. Continued complaints of lower extremity pain and edema were periodically documented by Plaintiff's treating physicians thereafter. Tr. at 286, 304, 314, 333, 320, 438.

Plaintiff also began complaining about shoulder pain shortly after her heart attack and was referred to an orthopaedist, Dr. Eric Heimberger. Dr. Heimberger diagnosed Plaintiff with impingement syndrome of the right shoulder and bursitis on January 10, 2008 and administered a cortisone injection. Tr. at 321-22. A follow up visit on February 21, 2008 indicated some relief from the shoulder symptoms but later records indicated that the injections were of only short term benefit. Tr. at 304, 323, 324. Plaintiff was seen on December 8, 2008 for complaints of worsening right shoulder pain and right leg pain at the Smith Medical Clinic, a free medical clinic operated by the Episcopal Church in Pawley's Island, South Carolina.[1] A physical examination revealed that Plaintiff's shoulder would not "abduct at all" and she was diagnosed with "frozen shoulder." Tr. at 304. A MRI of the right shoulder was performed at Georgetown

---

[1] *See* www.holycrossfm.org/outreach/smith-medical-building.

Memorial Hospital on December 15, 2008 which revealed abnormalities in the rotator cuff of the right shoulder "compatible with tendinosis." Tr. at 308-09. Following the abnormal MRI, Plaintiff returned to Dr. Heimberger on January 5, 2009. Dr. Heimberger, following a review of the MRI and a physical examination of the patient, confirmed his earlier diagnosis of tendinitis and provided Plaintiff another cortisone injection. Tr. at 324-25. Three days later, Plaintiff was again seen at the Smith Medical Clinic and stated she had seen no noticeable improvement from the injection. Tr. at 314. Plaintiff was referred to physical therapy but was unable to meet any of the goals of the therapy, including a decrease in pain and an improvement in her range of motion. Tr. at 330-34. Plaintiff's physical therapy records document complaints of severe pain in her right shoulder and lower extremities and "visible weakness" in her right upper extremity. Tr. at 332-334. Plaintiff was also seen in the Emergency Department at Georgetown Medical Center on February 3, 2009 complaining of pain in her left shoulder. The emergency room physician documented pain on palpation of the joint and "a lot of pain with abduction." Tr. at 371-72.

Plaintiff returned to the Smith Medical Clinic of February 20, 2009 and was documented to have limited range of motion in both shoulders. She was encouraged to return to Dr. Heimberger but she explained that she had no insurance or funds necessary to pay for his services. Tr. at 318. Plaintiff was seen again at the Smith Medical Clinic on July 29, 2009 and was documented to have limited shoulder movement due to her tendinitis and bursitis and had edema of her lower extremities. Tr. at 320. She was also seen on September 25, 2009 and was documented with bilateral shoulder pain and significant lower extremity pain, which was noted to have arisen since her heart attack. Tr. at 435.

Plaintiff was thereafter evaluated and treated by a board certified anesthesiologist, Dr.

Rex Quigley, at the Smith Medical Clinic. He documented on October 14, 2009 Plaintiff's history of "severe, continuous pain" and noted that a recent MRI had demonstrated the presence of tendinosis. Tr. at 436. Dr. Quigley administered another cortisone injection, which seemed initially to provide relief but by November 11, 2009 it was noted she had not had any improvement. Tr. at 436, 439, 444. Plaintiff was also documented at the Smith Medical Clinic on October 19, 2009 to have bilateral upper extremity pain and weakness so great "[s]he can't hold a glass in her hand." Tr. at 438. Dr. Quigley noted on October 28, 2009 that a recent MRI had revealed evidence of what he believed were cervical spine abnormalities. Tr. at 439.

Following this history of evaluation and treatment of Plaintiff at the Smith Medical Clinic, which included at least 11 office visits over a 12-month period, Dr. Quigley prepared responses to a disability questionnaire on January 21, 2010.[2] He found that the Plaintiff had "severe" pain and problems in her bilateral shoulders in limitation of motion, weakness, bursitis, impingement syndrome, arthritis, and frozen shoulder. Tr. at 451. He opined that Plaintiff could lift no weight over five pounds and could do this only occasionally. Tr. 455. He also documented that Plaintiff needed to keep her legs elevated "most of time" and he answered the question of the hours she could work per day with "none." Tr. at 449. He also noted her "weakness and fatigue due to cardiac condition." *Id.*

The Administrative Law Judge conducted a hearing on February 3, 2010. Plaintiff testified that "[b]oth of my shoulders are frozen" and "I can't use either one." Tr. at 6. She also testified that she could "lift very little" because she had "weak hands." Tr. at 36. Plaintiff

---

[2] Dr. Quigley appears to have seen Plaintiff on at least three of these visits, where he administered pain therapy through cortisone injections. Tr. at 436, 439, 444.

further stated that her 24-year-old daughter did the household chores and has to "wash me, change my clothes and stuff. Sometimes my arms be so numb and heavy from the pain I can't even lift it." Tr. at 39.

The Commissioner presented the opinions of two chart reviewers, who did not evaluate or examine Plaintiff and had no history of treating her. One of these chart evaluators, Dr. Shixiong Liao (who referred to himself as "Jim Liao") is, according to the South Carolina Board of Medical Examiners website, trained as a pathologist.[3] In a report prepared on March 19, 2008, Dr. Liao noted Plaintiff's cardiac history and right shoulder pain but concluded that her complaints were only "partially credible." Tr. at 289-92. He also concluded that she could lift 10 pounds frequently and 20 pounds occasionally but provided no evidence upon which he based such an opinion. Tr. at 288. Dr. Liao's report indicated that Plaintiff had sufficient residual functional capacity to work. Notably, Dr. Liao's report predates all of the Smith Medical Clinic treatment.

The other chart review provided by the Commissioner was by Dr. Jean Smolka, who, according to the South Carolina Board of Medical Examiners, is trained as a pediatrician.[4] In her report, dated June 26, 2008, she reached remarkably similar conclusions to Dr. Liao, arriving at exactly the same lifting limitations and concluding that Plaintiff had sufficient residual functional capacity to work. Tr. at 296-303. Like Dr. Liao's chart review, Dr. Smolka completed her review before the treatment afforded Plaintiff at the Smith Medical Clinic.

In a decision issued on March 23, 2010, the Administrative Law Judge ("ALJ") found

---

[3] https://verify.llronline.com/LicLookup/Med/Med2.aspx?LicNum=24005&cdi=350.

[4] https://verify.llronline.com/LicLookup/Med/Med2.aspx?LicNum=20693&cdi=350.

that Plaintiff had "severe impairments" with "osteoarthritis of the left knee, impingement syndrome of the right shoulder and coronary artery disease, status post stenting and myocardial infarction." Tr. at 12. The ALJ also found that these impairments limited Plaintiff to sedentary work and that she was not able to perform her last relevant work. Tr. at 14-18. In reaching this conclusion, the ALJ separately analyzed the patient's cardiac and orthopaedic problems and found that each supported a limited range of sedentary work. *Id.*

The ALJ then addressed the opinions offered by the treating physician, Dr. Quigley, which the ALJ stated she gave "no weight" because "they are unsupported by Dr. Quigley's Smith Clinic treatment notes . . . as well as [Plaintiff's] treatment notes with Dr. Heimberger . . ., and her 2009 cervical and bilateral shoulder x-rays and MRI scans which were unremarkable." Tr. at 17. Instead, the ALJ relied on the chart reviews provided by Drs. Liao and Smoak, which the ALJ found were "somewhat supported by the objective medical evidence." Tr. at 17.

Following the issuance of the ALJ decision denying Plaintiff's application for disability benefits, she timely sought review by the Appeals Council and, when no relief was provided, timely filed a request for review with this Court.

## Discussion

### A. Failure to give the opinions of a treating physician, Dr. Quigley, proper consideration under controlling Social Security Regulations

Generally speaking, the Social Security Administration accords greater weight to the opinions of treating physicians because treating sources are "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments and "may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). Where a treating physician's opinions are

"well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the record," the Commissioner is obligated to give those opinions controlling weight. *Id.* To the extent the opinions of the treating physician are not given controlling weight, the treating physician's opinions will still be evaluated by a variety of factors, including whether the physician has examined the patient, the nature, length, and extent of the treating relationship, the supportability of the opinions with other evidence in the record, and whether the treating physician is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i),(ii).

    The ALJ's evaluation of Dr. Quigley's opinions falls far short of these well settled legal standards. First, the ALJ is obligated, even where the treating physician's opinion is not given controlling weight, to consider and weigh the nature and extent of the treating physician's relationship and his special expertise, if any. Dr. Quigley and his colleagues at the Smith Medical Clinic had considerable exposure to Plaintiff through frequent clinical evaluations, diagnostic studies, and observations from various treatment approaches. As an anesthesiologist, Dr. Quigley had a special expertise in pain management that provided him potentially valuable insight into the nature and extent of Plaintiff's condition. The ALJ failed to consider and weigh the various factors set forth in 20 C.F.R. § 404.1527, particularly those which appear most obviously relevant to the circumstances regarding Dr. Quigley's treatment relationship with Plaintiff and his special expertise. To dismiss Dr. Quigley's opinions outright and summarily (giving "no weight" to his opinions) is inconsistent with the mandate of the regulations to provide special consideration to

the opinions of a claimant's treating physician.[5]

Second, the ALJ's finding that Dr. Quigley's opinions are unsupported in his treatment records or in Plaintiff's other medical records is itself unsupported by substantial evidence. Without attempting to be exhaustive, the Court identifies in the record the following evidence supportive of Dr. Quigley's opinions:

1. Dr. Quigley's Smith Medical Clinic note of October 14, 2009 documenting Plaintiff's "severe, continuous" shoulder pain. Tr. at 436.

2. Dr. Quigley's Smith Medical Clinic note of October 28, 2009 interpreting the MRI of the cervical spine as showing "cervical disc disease or cervical spondylosis." Tr. at 439.

3. Dr. Quigley's Smith Medical Clinic note of November 11, 2009 documenting no improvement from the injections to Plaintiff's right shoulder. Tr. at 444.

4. Smith Medical Clinic note of December 9, 2008 finding "shoulder frozen." Tr. at 304.

5. Smith Medical Clinic note of February 26, 2009 documenting limited range of motion in both shoulders. Tr. at 318.

6. Smith Medical Clinic note of July 29, 2009 documenting limited shoulder movement due to tendinitis and bursitis and edema of patient's lower extremities. Tr. at 320.

7. Smith Medical Clinic note of September 25, 2009 documenting patient's lower extremity and bilateral shoulder pain. Tr. at 435.

8. Smith Medical Clinic note of October 19, 2009 documenting bilateral upper extremity

---

[5] It does appear odd to the Court that the opinions of a treating physician with special expertise would be summarily rejected while the opinions of two chart reviewers were given "some weight," particularly where the ALJ found the chart reviewers opinions were only "somewhat supported" by the record. Tr. at 17.

pain and weakness so great patient "[c]an't hold a glass in her hand." Tr. at 438.

9. MRI of December 15, 2008 showing "inflammation of the musculotendinous insertion and the appearance of tendinosis." Tr. at 308.

10. Dr. Heimberger's findings on January 10, 2008 and January 5, 2009 of a positive impingement sign in the right shoulder. Tr. at 321, 324-25.

11. Multiple entries in Plaintiff's physical therapy records indicating significant shoulder and lower extremity pain and weakness. Tr. at 330-34. These include such statements as "shoulder really hurt this weekend," shoulder "hurt so bad the other day I went to ER," "today pain in [right] groin and knee worse than [right] sh[oulder] pain," and "visible weakness noted [with exercise] in [right] l[ower] e[xtremity]."

The ALJ's failure to properly weigh and evaluate Dr. Quigley's opinions as a treating physician, as mandated by 20 C.F.R. § 404.1527(c), requires the decision of the Commissioner to be reversed and remanded. On remand, the Commissioner, in evaluating the opinions of Dr. Quigley, should review the entire medical record and provide the appropriate respect and deference to a claimant's treating physician required by controlling regulations.

**B. Failure to consider Plaintiff's impairments in combination**

A fundamental principle of Social Security disability law is that the Commissioner must consider "the combined effect of all of the [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). In her order, the ALJ alternatively addressed the Plaintiff's significant coronary history, right shoulder complaints, and lower extremity difficulties. Tr. at 15-17. For each, the ALJ found that the impairment supported

a finding of a limited range of sedentary work. *Id.*

However, the ALJ failed to consider the combined effect of these severe impairments, as mandated by 42 U.S.C. § 423(d)(2)(B). This is potentially significant in regard to Plaintiff's claim for disability. It requires little imagination to appreciate the potential combined effects that severe impairments of the upper and lower extremities and cardiac disease (here presenting with the symptom of fatigue) might have on a claimant's ability to perform work. A review of Dr. Quigley's completed questionnaire appears to address the combined effects of Plaintiff's multiple impairments. Tr. at 447-55. The Court finds that the ALJ's failure to consider and weigh the combined effects of Plaintiff's multiple impairments provides a separate and independent basis for reversal and remand.

## Conclusion

Based on the foregoing, the decision of the Commissioner is **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDED** for further consideration consistent with this Order.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

December 4, 2012
Charleston, South Carolina